# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHELLE BAILEY, | |
| Plaintiff, | |
| v. | Case No. 08-601-JPG |
| ILLINOIS DEPARTMENT OF CORRECTIONS, | |
| Defendant. | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the Motion for Summary Judgment (Doc. 31) filed by Defendant Illinois Department of Corrections ("IDOC"). Plaintiff Michelle Bailey ("Bailey") has responded (Doc. 34), and Defendant has replied (Doc. 35). Bailey alleges that Illinois Department of Corrections is liable under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, for sexual discrimination and sexual harassment. IDOC denies any such discrimination or harassment. For the following reasons, the Court **GRANTS** Defendant's motion.

## BACKGROUND

### I. Summary Judgment Standard

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396. This standard is applied with special scrutiny in cases, such as employment discrimination cases, that often turn on issues of intent and credibility. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Michas*, 209 F.3d at 692. Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *accord Michas*, 209 F.3d at 692.

## II. Facts

Taken in the light most favorable to Bailey, the evidence establishes the following facts.

Bailey served as a Corrections Officer for IDOC at the Centralia Correctional Center ("CCC") from January 21, 2002, until her discharge, which serves as the center of the present lawsuit. According to annual evaluations, Bailey had performed her job in a satisfactory manner and had never been involved in a serious disciplinary investigation prior to the following June 2007 incident that resulted in her discharge.

In June 2007, Lamont Clark ("Clark"), an inmate at CCC, asked Bailey to bring him two packs of Black and Mild Cigars from outside the facility. Clark told Bailey that he wanted to

2

trade the cigars for food, which would violate departmental rules governing inmates at CCC. At the time, CCC commissary permitted inmates to carry two packs of cigars, although it is unknown whether the Black and Mild brand of cigars constituted contraband. Following a shakedown of Clark's cell on June 16, 2007, an officer discovered Black and Mild Cigars, and Clark indicated that he had received the cigars from Bailey.

Bailey was thereafter charged with failure to comply with departmental rules, socializing, trading or trafficking, engaging in conduct which impaired her ability to be impartial, granting offenders special privileges, engaging in conduct that was unbecoming, and failing to act in a professional manner. In an interview with Investigator Rick Harrington held on September 6, 2007, Bailey admitted that Clark had expressed his intent to trade the cigars for other items. Assistant Warden Julius Flagg recommended an employee review board hearing regarding Bailey's conduct, which was held on November 1, 2007. At the hearing, Bailey admitted to purchasing the cigars at a local gas station and bringing them into CCC for Clark. Ultimately, the hearing officer found Bailey guilty of all the aforesaid charges; accordingly, the officer recommended Bailey's discharge. Bailey was suspended without pay on November 16, 2007, pending discharge.

Warden Brad Roberts approved and forwarded the recommendation of discharge to Chief of Staff James Reinhart ("Reinhart"), who reviews and issues final disciplinary decisions of five-day suspensions or greater at CCC. Relying on the aforementioned recommendations as well as considering Bailey's position as a correctional officer and her conduct, Reinhart approved Bailey's discharge. Nearly four months since the date of her suspension, Bailey was terminated on March 10, 2008.

Bailey alleges that Jim Endres ("Endres"), Harold Combs ("Combs"), and Mark Copple ("Copple"), three male employees of CCC, engaged in similar or more serious conduct than she but received substantially lighter punishment due to sex discrimination.[1] The relevant facts of each will be chronicled in kind.

On or around October 30, 2007, Endres, a male maintenance worker at CCC, was charged with trading or trafficking, theft, and violation of contraband rules. Specifically, an inmate asked Endres whether he could have a piece of candy on another employee's desk. After Endres told the inmate that the other employee was not working, the inmate indicated that the other employee always let him have candy. Endres responded "whatever," and, construing such response as condonation, the inmate took the candy. Endres received a three-day suspension for this incident and retained his position with CCC. Since Endres's punishment was a suspension of less than five days, Reinhart did not take part in review of the disciplinary actions or finding.

On or around August 28, 2006, Combs, a male correctional sergeant with CCC, was found to have violated standards involving conduct, trading and trafficking, key control, unauthorized absence from his post, showing partiality, and armory procedures. Specifically, IDOC Internal Affairs determined that Combs had given an inmate soda and ramen noodles that were either in the prison's garbage or about to be thrown in the garbage. Combs received a seven-day suspension for his conduct and retained his position with CCC.

---

[1] It should be noted that Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. 34) references three more male employees of CCC that were given lighter punishment for allegedly similar or more serious conduct. In addition to Endres, Combs, and Copple, Bailey points to Herman Lee, Elmer Bowman, and Jim Lowry. However, apart from a vague introductory assertion, Bailey does not go into any more detail regarding these individuals in her response. As such, the Court will not delve into the conduct of these individuals or any relation they may have to the instant case.

Finally, on or around April 1, 1998, Copple, a male correctional sergeant with CCC, was charged with fraternizing, trading and trafficking, unprofessional conduct, and submitting false information in November 1997 when he gambled with inmates for packs of cigarettes. Copple received a ten-day suspension for such conduct and remained employed by CCC. It should be noted that different supervisors (specifically, the hearing officer, warden, and department director) oversaw the discipline of Bailey and Copple.

Bailey additionally alleges IDOC engaged in sexual harassment and created a hostile work environment. Specifically, during the course of the aforementioned investigation, the possibility of custodial sexual misconduct between Bailey and Clark was explored. However, due to insufficient evidence, formal charges were never filed. During Bailey's interview on September 6, 2007, Lieutenant Rick Taphorn ("Taphorn") asked her whether she had engaged in any contact with Clark, as a confidential and allegedly reliable source had informed Taphorn of such. After Bailey's denial, Taphorn ceased questioning on the issue, and any sexual misconduct allegations were never followed up in the referral given to Warden Flagg.

**ANALYSIS**

Bailey has presented two claims under Title VII. First, Endres, Combs, and Copple, three male employees of IDOC via varying roles with CCC, represent similarly situated individuals who received substantially lighter punishment due to sex discrimination. And, second, improper allegations and questioning as to whether a sexual relationship existed between Bailey and Inmate Clark created a hostile work environment that represents actionable sexual harassment.

**I.    Sex Discrimination**

Title VII prohibits discrimination on the basis of sex: "It shall be an unlawful

5

employment practice for an employer . . . to discharge any individual . . . because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1) (2006). To withstand a motion for summary judgment, a Title VII plaintiff may present direct proof of discrimination through direct or circumstantial evidence. *Walker v. Glickman*, 241 F.3d 884, 888 (7th Cir. 2001); *Debs v. Northeastern Ill. Univ.*, 153 F.3d 390, 395 (7th Cir. 1998). A plaintiff may also proceed using the burden shifting mechanism outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Because Bailey has not offered any direct or circumstantial evidence of discrimination, she must proceed under the *McDonnell Douglas* approach.

Under this approach, a plaintiff must first establish a *prima facie* case of discrimination by presenting evidence that: (1) she is a member of a protected class, (2) she was meeting her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) she was treated less favorably than others not in the protected class who were similarly situated. *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 790 (7th Cir. 2007); *Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 531 (7th Cir. 2003). A plaintiff's successful demonstration of each of these elements creates a rebuttable presumption of discrimination. *Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003). The second and fourth prongs of *McDonnell Douglas* merge in discriminatory discipline cases. *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 592 (7th Cir. 2008) (citing *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 728 (7th Cir. 2004)). In such cases, the plaintiff must show that she received dissimilar and harsher punishment than that received by similarly situated employees outside of the protected class. *Id*.

IDOC concedes that, as a female, Bailey is a member of a protected class and satisfies the first element of *McDonnell Douglas*. Further, IDOC agrees that Bailey suffered an adverse employment action when she was terminated, thereby fulfilling the third element. Following

merger of elements two and four, only the similarly situated question remains.

To be similarly situated, an employee must be "directly comparable . . . in all material aspects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002); *accord Boumehdi*, 489 F.3d at 791 (7th Cir. 2007). Those "material aspects" depend on the specific situation involved in the case and may include whether the employees dealt with the same supervisor, were subject to the same standards, or had comparable experience, education and qualifications, if the employer took these factors into account when making the personnel decision in question. *Patterson*, 281 F.3d at 680. "Different employment decisions, concerning different employees, made by different supervisors . . . sufficiently account for any disparity in treatment, thereby preventing an inference of discrimination." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). In fact, "a similarly situated employee *must* have been disciplined, or not, by the same decisionmaker who imposed an adverse employment action on the plaintiff." *Little v. Ill. Dept. of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004) (emphasis added). Plaintiffs must remember that courts are not "super personnel departments, second-guessing an employer's facially legitimate business decisions." *Ajayi*, 336 F.3d at 532.

In the case at bar, Bailey's belief that Endres, Combs, and Copple represent similarly situated individuals is a significant stretch under the guidance articulated in *Patterson* and *Radue*. Each will be addressed in kind.

First, Bailey's situation stands in stark contrast to that of Endres. Endres was suspended three days for allowing an inmate to take candy from another CCC employee's desk. Endres did not bring, offer, or give candy to the inmate; rather, he responded "whatever" to the inmate's apparent interest in the candy. Meanwhile, Bailey brought in cigars for Inmate Clark that she knew would likely be traded and trafficked in the prison. While Bailey argues in her response

7

that the cigars were for her own use, this is contradicted numerous times in the record, and IDOC correctly points out that litigants cannot "create 'sham' issues of fact with affidavits . . . ." *Lorillard Tobacco Co. v. A & E Oil, Inc.*, 503 F.3d 588, 592 (7th Cir. 2007) (citing *Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005)). Bailey's active purchase and delivery of the cigars to Clark holds little resemblance to the passivity exhibited by Endres. Further, it cannot be ignored that Bailey's position as a corrections officer and Endres's role as a plant maintenance engineer likely assisted in dictating their respective punishment. Although Bailey's contention that all prison employees have a duty to watch over inmates in their vicinity may be true, the differing roles and responsibilities of a corrections officer and plant management engineer serve as adequate explanation of the disparity in punishment.[2]

Bailey's situation is closest to that of Combs, however, the two fail to meet the similarly situated test. Combs gave soda and noodles to an inmate that were either in the prison's garbage or about to be placed in the garbage. Again, Combs's situation diverges from Bailey's, in that she brought cigars in from outside of the facility to deliver to Clark. Additionally, as a correctional sergeant, Combs held a different position with CCC than Bailey, which serves to explain the disparity in punishment. While Bailey may not agree with such disparity, *Ajayi* made clear that the Court does not represent a "super personnel department" that simply second guesses internal investigations, hearings, and discipine.

Finally, Bailey points to Copple as similarly situated, but the Court fails to see merit in such argument. Over ten years have passed since Copple's ten-day suspension for gambling cigarettes with inmates. More importantly, different wardens and directors oversaw the

---

[2]It also bears mentioning that Chief of Staff Reinhart did not review Endres's case.

punishments of Copple and Bailey. Bailey contends that the difference in disciplinarians goes to the weight of the evidence, but IDOC correctly points out that such disparity defeats any contention of substantial similarity.

Assuming *arguendo* plaintiff has established a *prima facie* case of sex discrimination, the burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action. *Boumehdi,* 489 F.3d at 790; *Grayson*, 317 F.3d at 748. If the defendant is able to provide evidence of such a reason, the burden shifts back to the plaintiff to show that the articulated reason is actually a pretext. *Boumehdi,* 489 F.3d at 790; *Grayson*, 317 F.3d at 748. It is important to note that the ultimate burden of persuasion remains at all times with the plaintiff. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Here, the Court is satisfied with IDOC's rationale regarding Bailey's termination. IDOC found that Bailey failed to comply with departmental rules, socialized, traded or trafficked, engaged in conduct which impaired her ability to be impartial, granted offenders special privileges, engaged in conduct that was unbecoming, and failed to act in a professional manner. Due to the violation of such a multitude of departmental rules by a corrections officer, IDOC concluded that Bailey's conduct warranted discharge. IDOC has a strong interest in securing its facilities and maintaining the professionalism of its employees. As such, the Court finds Bailey's termination to be legitimate and non-pretextual, regardless of the prior job evaluations and reviews that she touts. In addition, the Court finds Bailey's argument of sexual harassment to be without merit, as set out below. In following the above stated rationale, IDOC is entitled to summary judgment on this claim.

**II.     Sexual Harassment**

Title VII sexual harassment claims relate to a hostile work environment, which is created by conduct that has "the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986); *accord Cooke v. Stefani Mgmt. Servs.*, 250 F.3d 564, 566 (7th Cir. 2001). To establish a *prima facie* case of sexual harassment under Title VII, a plaintiff must show that 1) she was subjected to unwelcome harassment; 2) the harassment was based on her sex; 3) the harassment was sufficiently severe or pervasive so as to alter the condition of her employment and create a hostile or abusive atmosphere; and 4) there is a basis for employer liability. *Boumehdi*, 489 F.3d at 788 (citing *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 940 (7th Cir.2007))**.**

In the instant case, Bailey claims sexual harassment due to charges of a sexual nature brought against her and a single line of questioning by Lieutenant Taphorn at an administrative interview. The Court notes that Bailey never had any sexual misconduct charges formally brought against her, and any such allegations did not form the basis of her discharge. She admits that Lieutenant Taphorn, acting on information received from an allegedly credible source, ceased questioning on the issue after she denied any sexual involvement with Inmate Clark. The limited investigation that did exist does not appear to have been carried out for the purpose of creating an intimidating, hostile, or offensive environment in which Bailey was to work. Furthermore, Bailey does not explain how these sexual allegations negatively affected her job performance; rather, she merely avers that, if she were male, such allegations would have been better examined. The Court fails to see how such contention meets the requisite severity or

pervasiveness of sexual harassment under Title VII. As such, IDOC is entitled to summary judgment on this claim.

## CONCLUSION

In conclusion, none of Bailey's claim have survived summary judgment. Accordingly, the Court **GRANTS** IDOC's Motion for Summary Judgment (Doc. 31). The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: September 9, 2009**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**